UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Q3 INVESTMENTS RECOVERY
VEHICLE, LLC,

    Plaintiff,

v.                                      Case No. 8:20-cv-756-T-33AAS

QUAN TRAN, et al.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff Q3 Investments Recovery Vehicle, LLC's Renewed Motion to Remand (Doc. # 40), filed on April 27, 2020. Defendant Quan Tran responded on May 11, 2020. (Doc. # 57). Q3 Investments Recovery filed a reply on May 22, 2020. (Doc. # 69). For the reasons that follow, the Motion is granted.

**I.**     **Background**

Q3 Investments Recovery initiated this action in state court on March 12, 2020. (Doc. # 1-6). Q3 Investments Recovery is an entity "created by victims of a $35 million Ponzi scheme to pool their claims and resources to attempt to recover their substantial losses." (Id. at 2). "From approximately August 2017 to December 2019, the [individual Defendant] Founders [of Defendant Q3 I, LP] solicited funds to supposedly trade

1

virtual currencies through the Q3 Entities." (Id.). "The Founders claimed, fraudulently, that the investments would be used to trade cryptocurrency using a proprietary and wildly successful algorithm developed by [Defendant Michael] Ackerman." (Id.).

The complaint asserts claims for fraud (Count I), conspiracy to commit fraud (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count V), negligence (Count VI), and vicarious liability (Count VII) against Tran and numerous other Defendants. (Id.). The complaint alleges that many of Q3 Investments Recovery's members and some Defendants are citizens of Florida, such that complete diversity does not exist. (Id. at 3-4).

Tran removed the case to this Court on April 1, 2020. (Doc. # 1). Tran then filed an amended notice of removal on April 16, 2020, premising removal solely on the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C. § 77p(c), 15 U.S.C. § 78bb(f)(2), and 28 U.S.C. § 1441. (Doc. # 18).

Q3 Investments Recovery now seeks remand. (Doc. # 40). The Motion is now ripe.

**II. Discussion**

Q3 Investments Recovery argues that remand is proper because the Supreme Court's decision in <u>Chadbourne & Parke LLP v. Troice</u>, 571 U.S. 377 (2014) "precludes application of SLUSA to this case." (Doc. # 40 at 2-3).

For SLUSA to apply to this case, Q3 Investments Recovery must allege a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(B)(i). A covered security is a security "designated as qualified for trading in the national market system [by the SEC] that is listed, or authorized for listing, on a national securities exchange." 15 U.S.C. § 77r(b)(1)(A).

The party that removes an action to federal court pursuant to SLUSA bears the burden of showing that:

> "(1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact 'in connection with the purchase or sale of such security.'"

<u>Behlen v. Merrill Lynch</u>, 311 F.3d 1087, 1092 (11th Cir. 2002)(citation omitted).

Q3 Investments Recovery argues Tran cannot satisfy the third and fourth elements. According to Q3 Investments

3

Recovery, Defendants "Tran, Seijas, and Ackerman sold interests in [Defendant Q3 I, LP] to their victims by representing [Q3 I, LP] would trade 'strictly' in cryptocurrency using a novel algorithm created by Ackerman, which was designed to profit from the volatility of cryptocurrency markets." (Doc. # 40 at 4; Doc. # 1-6 at 2, 5-8).

Tran acknowledges in his amended notice of removal that "the limited partnership interests acquired by each investor/assignor do not meet the definition of a 'covered security.'" (Doc. # 18 at 7). But, in his response to the Motion, Tran represents that "most of the investors executed subscription agreements, and the subscription agreements included a joinder agreement by which the investors agreed . . . 'to be subject to the terms and conditions of the Partnership Agreement.'" (Doc. # 57 at 6; Doc. # 18-6 at 45).

In turn, the Partnership Agreement provides in relevant part: "The Partnership is organized for the purpose of investing in Investments . . . ." (Doc. # 18-6 at 7). Appendix A of the Partnership Agreement defines "Investments" as "cryptocurrencies and other digital commodities (together 'Digital-Assets') including but not limited to bitcoin, Ethereum, Litecoin, NEM, Lisk, Monero, Ethereum Classic,

Augur, Zeash, Decred, Gnosis, GameCredits, Dogecoin, PIVX, Stellar Lumens, Bitshares, Ardor, Peercoin, NXT, Evercoin, Syscoin, and Siacoin." (Id. at 33). The definition continues thus: "Notwithstanding the foregoing, investments of the Partnership may take a broad variety of forms and may include, without limitation, publicly traded stocks, options and ETFs whether traded on exchanges, over-the counter or negotiated on electronic markets." (Id.). The assets mentioned in this disclaimer portion of the definition, such as stocks and ETFs, are covered securities. (Doc. # 57 at 7).

Q3 Investments Recovery maintains that Tran's admission that the limited partnership interests are uncovered securities is — by itself — fatal to removal. The Court disagrees that Troice automatically requires remand.

"The question [in Troice was] whether [SLUSA] encompasses a class action in which the plaintiffs allege (1) that they 'purchase[d]' *uncovered* securities (certificates of deposit that are *not* traded on any national exchange), but (2) that the defendants falsely told the victims that the *uncovered* securities were backed by *covered* securities." Troice, 571 U.S. at 381. Because the defendant bank in Troice represented that it "would use the victims' money to buy *for itself* shares of covered securities," the plaintiffs never

5

took any ownership interest in covered securities. Id. at 396. Rather, the defendant bank's alleged purchase of covered securities was merely supposed to make plaintiffs' investment in uncovered securities with the defendant more secure. Id. Thus, Troice was not a true "feeder fund" case, in which a plaintiff who purchases uncovered securities ends up obtaining some ownership interest in covered securities — the theory on which Tran predicates removal. (Doc. # 18 at 6-7).

True, Troice stated that "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" Troice, 571 U.S. at 387. But the Court is not convinced that the Supreme Court intended to destroy the feeder fund theory of SLUSA preemption by only allowing SLUSA preemption where the plaintiff investor directly purchased covered securities. As the Supreme Court wrote, "every securities case in which this Court has found a fraud to be 'in connection with' a purchase or sale of a security has involved victims who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in financial instruments that fall within the relevant

6

statutory definition." Id. at 388 (emphasis original). Thus, as long as a plaintiff maintains an ownership interest in a covered security or attempted to maintain such ownership interest, SLUSA may apply — even if the plaintiff only directly purchased uncovered securities.

The Eastern District of New York has reached a similar conclusion. That court persuasively held that "Troice does not stand for the broad proposition that SLUSA cannot apply whenever the defendant accused of fraud, instead of the plaintiff, was the one who purchased the covered securities." Goodman v. AssetMark, Inc., 53 F. Supp. 3d 583, 590 (E.D.N.Y. 2014); see also In re Kingate Management Limited Litigation, 784 F.3d 128, 142 (2d Cir. 2015)(holding that SLUSA still applied post-Troice where plaintiffs "purchased the uncovered shares of the offshore Funds, expecting that the Funds were investing the proceeds in S & P 100 stocks, which are covered securities" because the purchase was in effect an "attempted investment[] in covered securities, albeit through feeder funds").

The First Circuit Court of Appeals in Hidalgo-Velez v. San Juan Asset Management, Inc., 758 F.3d 98 (1st Cir. 2014), has similarly held that Troice — while influential — does not prevent SLUSA from applying to every feeder fund case. The

First Circuit acknowledged Troice's holding "that a misrepresentation in connection with the purchase of an uncovered security, by itself, is insufficient to bring a claim within the SLUSA's grasp." Id. at 107. But it went on to explain that, "[i]n certain cases, the primary intent or effect of purchasing an uncovered security is to take an ownership interest in a covered security" such that SLUSA applies. Id. Thus, a court "must carefully consider whether and to what extent the plaintiffs sought to take an ownership interest in covered securities," by asking "what the fund represents its primary purpose to be in soliciting investors and whether covered securities predominate in the promised mix of investments." Id. at 108.

The Court finds the reasoning of Hidalgo-Velez compelling.[1] That is, Troice does not preclude SLUSA

---

[1] Tran's argument that Hidalgo-Velez is "contrary to binding precedent of the Eleventh Circuit Court of Appeals" is unpersuasive. (Doc. # 57 at 11). Neither Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252 (11th Cir. 2003), nor Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340 (11th Cir. 2008), involved so-called feeder-funds, as Hidalgo-Velez did. Rather, Herndon and Instituto De Prevision Militar involved plaintiffs who purchased **both** covered and uncovered securities. Because the plaintiffs had directly purchased covered securities — albeit along with uncovered securities — the Eleventh Circuit held that SLUSA applied. As Hidalgo-Velez addresses a different scenario than that at issue in Herndon and Instituto De Prevision Militar, Hidalgo-Velez is not contrary to Eleventh Circuit precedent.

preemption in every case in which a plaintiff purchased uncovered securities but, through such uncovered securities, also took some ownership interest in covered securities. Rather, under Troice, SLUSA still applies "[i]n certain cases, [where] the primary intent or effect of purchasing an uncovered security is to take an ownership interest in a covered security." Hidalgo-Velez, 758 F.3d at 107. In short, SLUSA applies where the primary purpose of purchasing an uncovered security is to take an ownership interest in a covered security because such primary purpose creates "a connection that matters" with the purchase or sale of covered securities. See Troice, 571 U.S. at 387-88 (explaining that "[t]he phrase 'material fact in connection with the purchase or sale' suggests a connection that matters" and "a connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security, not to purchase or to sell an uncovered security").

But, here, Q3 Investments Recovery members' primary purpose in purchasing limited partnership interests — and the primary effect of that purchase — was not to obtain ownership interests in covered securities. The complaint makes clear that the primary purpose of Q3 I, LP was to purchase

9

cryptocurrency — an uncovered security. (Doc. # 1-6 at 2, 5-8).

While the language of the Partnership Agreement and its definition of "Investments" allowed Q3 I, LP to purchase certain covered securities in addition to cryptocurrency (Doc. # 18-6 at 33), such incidental ability to purchase covered securities is not sufficient to establish that Q3 I, LP's primary purpose was the purchase of covered securities. See Hidalgo-Velez, 758 F.3d at 108 ("Although the prospectus suggested that some (relatively small) part of the Fund's portfolio might include covered securities, any such holdings were incidental to the primary purpose of the Fund: the main allocative stipulation contained in the prospectus was that at least 75% of the Fund's assets would be invested in certain specialized notes offering exposure to North American and European bond indices. The defendants have not asserted that these particular investments were covered securities. In these circumstances, the link between the alleged misrepresentations and the covered securities in the Fund's portfolio is too attenuated to bring the complaint within the maw of the SLUSA."). Q3 I, LP's peripheral ability to purchase some covered securities in addition to the uncovered cryptocurrencies is not a connection to covered securities

10

"that matters." Troice, 571 U.S. at 387-88. The definition of "Investments" in the appendix to the Partnership Agreement supports this. At the outset, it defines "Investments" as various types of cryptocurrency, evincing that the purchase and sale of cryptocurrency was the limited partnership's primary purpose. The definition merely goes on to include what amounts to a disclaimer, allowing Q3 I, LP to additionally purchase some covered securities without violating the agreement. (Doc. # 18-6 at 33).

Thus, SLUSA does not apply. Because SLUSA formed the sole basis for removal to this Court, remand is warranted.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff Q3 Investments Recovery Vehicle, LLC's Renewed Motion to Remand (Doc. # 40) is **GRANTED.** The Clerk is directed to **REMAND** this case to state court and, thereafter, **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of June, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE